LEWIS M. BRIGGS *et al.* v. WILLIAM MCCLAIN *et al.*

INDIAN TITLE — *Patent to Heirs of Deceased Allottee.* Under the act of congress of August 4, 1886, § 2, (24 Stat. at Large, 219,) which provides that, on the death of an allottee of land under the treaty of June 28, 1862, with the Kickapoo Indians leaving heirs, and without having obtained a patent, the secretary of the interior shall cause a patent in fee simple to issue, in the name of the original allottee, the title passes from the government to the heirs of the deceased allottee.

*Error from Brown District Court.*

ACTION to quiet title. Judgment for the defendants, at the May term, 1888. The plaintiffs, *Briggs* and two others, bring the case to this court. The material facts are stated in the opinion.

*James Falloon,* for plaintiffs in error.

*D. C. Tillotson,* and *J. G. Waters,* for defendants in error.

Opinion by GREEN, C.: This is an action to quiet title to the south half of the southeast quarter of section 32, township 4, range 17, Brown county. The allegations of the petition are that on August 10, 1886, the plaintiffs became the owners in fee simple of the land in controversy; that said land was a part of the Kickapoo reservation and by the terms of the treaty between the government and the Kickapoo tribe of Indians, made June 28, 1862, and proclaimed May 28, 1863, was set off to the members of the tribe, and that the land above described was allotted to one Ke-o-tick, an adult male member of the tribe; that he took possession of said land and erected a house thereon and otherwise improved it; that Ke-o-tick died in Brown county, in December, 1875, without having received a patent for said land, and without having made proof to the United States district court of his ability to manage his affairs; that Ke-o-tick had been married to a citizen Pottawatomie woman by the name of Gooslin, and by her had a son named Ah-twine Gooslin; that Ke-o-tick died

intestate, leaving as his sole heir Ah-twine Gooslin, being a citizen Pottawatomie Indian; that on August 10, 1886, Ah-twine Gooslin, with his wife, for a valuable consideration, deeded said land to the plaintiffs, Briggs and Letson, who afterward conveyed an interest to the defendant Linn, and said conveyances had been duly filed for record in Brown county. The petition further alleges that the defendants make claim to said land through a deed obtained September 11, and September 23, 1886, from Wy-tos-see and Kom-so-qua, brother and sister of the deceased Ke-o-tick.

The defendants McClain and Roach demurred to this petition, on the ground that the petition did not state facts sufficient to constitute a cause of action, which was sustained by the court below, and the plaintiffs elected to stand upon the petition, and judgment was accordingly rendered for the defendants; and upon this judgment of the court below, in sustaining said demurrer, the plaintiffs below prosecute this proceeding in error. The determination of the question raised by the pleadings involves the construction of the treaty between the United States and the Kickapoo tribe of Indians, and the act of congress made in pursuance of said treaty. The treaty of June 28, 1862, provides that the whole Kickapoo reservation should be surveyed, and such members of the tribe as adopted the customs of the whites and desired to have separate tracts of land, should have them allotted to them in severalty, and that upon said assignment being made the commissioner of Indian affairs should issue a certificate to the allottee; that the tract was set apart for the perpetual and exclusive use and benefit of such allottee and his heirs, and should only be disposed of to the United States, or to the Indian members of the tribe, by permission of the president, and on issuing the certificate, the allottee shall be deemed to have waived all right to allotted lands and to other lands retained in common. The treaty further provides that when the president of the United States becomes satisfied that any adult male allottee, being the head of a family, is sufficiently intelligent and prudent to control his affairs and interests, he might, at the request of such

person, cause the land severally held to be allotted, by patent in fee simple, with power of alienation. In 1886, to carry out the provisions of this treaty, congress passed an act to provide for the settlement of the estates of deceased Kickapoo Indians in the state of Kansas and for other purposes. Section 2 of said act reads as follows:

"That where allottees under the aforesaid treaty shall have died or shall hereafter decease leaving heirs surviving them, and without having obtained patents for lands allotted to them in accordance with the provisions of said treaty, the secretary of the interior shall cause patents in fee simple to issue for the lands so allotted, in the names of the original allottees, and such allottees shall be regarded, for the purpose of a careful and just settlement of their estates, as citizens of the United States and of the state of Kansas; and it shall be competent for the proper courts to take charge of the settlement of their estates, under all the forms and in accordance with the laws of the state of Kansas, as in the case of other citizens deceased; and where there are children of allottees left orphans, guardians for such orphans may be appointed by the probate court of the county in which such orphans may reside; and such guardians shall give bonds, to be approved by the said court, for the proper care of the person and property of such orphans, as provided by law."

Under this act of congress the right to a patent became complete in the allottee. Nothing more remained to be done but the ministerial duty of the proper officer of the government to issue a patent; and by this act this duty was made imperative. Mr. Justice Field, in the case of *Stark v. Starrs*, 6 Wall. 418, says:

"The right to a patent, once vested, is treated by the government when dealing with the public lands as equivalent to a patent issued. When in fact the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary to cut off intervening claimants."

We think, under this treaty and the act of congress of 1886, the title to the land in controversy was fixed in the heirs of Ke-o-tick, the deceased allottee, whoever they may be. In the case of *Langdeau v. Hanes*, 21 Wall. 530, the court says:

"A legislative confirmation of a claim to land is a recogni-

tion of the validity of such claim, and operates as effectively as a grant or quitclaim from the government. . . . If the claim be to land with defined boundaries, or capable of identification, the legislative confirmation perfects the title to the particular tract, and a subsequent patent is only documentary evidence of that title."

The same doctrine was enunciated in the case of *Oliver v. Forbes*, 17 Kas. 124; and this treaty and the act of congress under consideration have received the construction which we have adopted, in the case of *Briggs v. Wash-puk-qua*, by the United States circuit court for the district of Kansas. (37 Fed. Rep. 135.) The court below erred in sustaining the demurrer to the plaintiffs' petition, and we therefore recommend that the judgment be reversed.

By the Court: It is so ordered.

All the Justices concurring.